UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ASHLEY MICHELLE FRAZIE
CRAVATTA,

    Plaintiff,

v.                                                                       Case No: 6:15-cv-1689-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income benefits under the Act. Upon review of the record and after due consideration, the Commissioner's final decision is **REVERSED** and the case is **REMANDED**.

### Background[2]

Plaintiff was 43 years old on her alleged disability onset date (R. 259),[3] with one year of college (R. 358) and work experience as an administrative clerk and data entry clerk (R. 101). She alleged an inability to work due to thyroid cancer, systemic lupus

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and Fed .R. Civ. P. 73 (Docs. 12, 14).

[2] The information in this section is largely taken from the parties' joint memorandum (Doc. 17).

[3] At her evidentiary hearing on September 13, 2013, she amended her alleged onset date to the protective filing date of April 5, 2011 (R. 142-143). Plaintiff had filed an earlier application for Supplemental Security Income which was denied and which she did not appeal (R. 120, 344-345).

erythematous (SLE), dizziness, and a blood-clotting problem that had caused strokes (R. 358). In other portions of the record, she alleged pain (R. 373, 672) and residuals from her conditions, including transient ischemic attacks (R.382, 685, 687-8), weakness and fatigue (R. 375, 378, 950), and memory problems (R. 379-382; 119-120).

Plaintiff's application was denied initially and upon reconsideration, and she requested and received an administrative hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on February 14, 2014 (R.90, 198, 207, 219).[4]

Plaintiff timely filed a Request for Review of Hearing Decision with the Appeals Council (R. 89), submitting additional medical evidence.[5] However, the Appeals Council concluded that the evidence post-dated the ALJ's decision and denied further review on August 5, 2015 (R. 1- 2). Accordingly, the ALJ's February 2014 decision finding Plaintiff not disabled is the final decision of the Commissioner. Having exhausted all available administrative remedies, Plaintiff timely filed this action for judicial review (Doc. 1).

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must determine whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an

---

[4] According to the parties' joint memorandum, on February 1, 2014, Plaintiff's representative wrote to the ALJ to advise that he had submitted additional medical records from Florida Hospital through 1/24/14, but that Plaintiff had been hospitalized on 1/25/14 and remained there. Plaintiff's representative stated that he would be obtaining these additional Florida Hospital records and was expecting more records from Florida Cancer Specialists; he further advised that the claimant had TSH levels of "over 100,000" which far exceeded the normal range of 0.5-2.0 mlU/L. (R. 459).

[5] The additional records submitted included: (i) Florida Hospital for the periods of 1/25/14 - 1/31/14, 2/5/15 - 2/11/15, 3/6/15 - 3/9/15; (ii) Dr. Prudent Marcelin for the period of 5/15/13 - 3/20/15; (iii) Florida Heart Group for the period of 4/10/15 - 5/19/15; and (iv) Cardiovascular Surgeons, PA, for the period of 4/6/15.

impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The plaintiff bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 2, 2011, the application date (R. 95).[6] At step two, the ALJ determined that Plaintiff had the following severe impairments: anti-phospholipid syndrome (APLS),[7] history of cerebrovascular accident, obesity, fibromyalgia, hypothyroidism, status post thyroidectomy for thyroid cancer, and depressive disorder (20 CFR 416.920(c)) (R. 95). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that medically met or equalled the severity of any of the impairments listed in 20 CFR Part 404, Subpat1 P, Appendix 1. Id. Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except she can sit, stand, and walk for 6 hours an 8 hour workday and can occasionally climb stairs, stooping, crouching, balancing. The claimant should refrain from climbing ladders, ropes, and scaffolds, working at heights, or with dangerous moving machinery. Additionally, she should avoid temperature extremes. The claimant can perform simple 1-3 repetitive steps with occasional changes in work setting and occasional superficial interaction with coworkers and general public however, she should not travel to unfamiliar places.

---

[6] There is some confusion as to the pertinent onset date (See R. 142-143). As remand is required, whether the onset date is April 2011 or December 2011 is not determinative.

[7] "AP[L]S is an autoimmune blood disorder common in lupus patients." See http://www.lupus.org/answers/entry/antiphospholipid-syndrome, (last visited December 5, 2016).

(R. 97).

At step four, the ALJ found that Plaintiff was not able to perform any of her past work, but found, at step five, that based on Vocational Expert testimony, there was other work in the national economy she could perform (R.101-102). Thus, the ALJ concluded Plaintiff was not disabled from December 2, 2011, the date of her application, through the date of the ALJ's decision (R. 93, 102-03).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v.

Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff raises two issues on appeal: 1) whether the ALJ's RFC determination that Plaintiff is capable of performing "light" work is supported by substantial evidence; and 2) whether the ALJ properly weighed the medical source statement of Dr. Prudent Marcelin. The Court finds the first issue dispositive.

*Substantial Evidence*

Plaintiff maintains that the ALJ's determination that she had the RFC to perform light work is not supported by substantial evidence, noting that the ALJ's references to medical exhibits are inaccurate; the ALJ relied on outdated or incomplete evidence; and the ALJ's conclusions are inconsistent with the record, showing that the ALJ did not consider the record as a whole. The Commissioner acknowledges certain errors, but contends that substantial evidence nevertheless supports the ALJ's findings. Applying the standard of review and viewing the record as a whole, the Court agrees with Plaintiff that the conclusions reached by the ALJ are not adequately supported, and remand is appropriate.

A claimant's RFC is the most she can still do despite her limitations and is based on an evaluation of the relevant evidence in the record. See 20 C.F.R. §§ 416.920(e), 416.945(a)(1), (a)(3); Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). Here, the administrative decision contains a significant number of errors, sufficient to question whether Plaintiff's alleged impairments were adequately considered.

The ALJ states that "[a] review of the record shows that the claimant's medical conditions are generally stable and controlled with medication. Exhibit 8F documents the

claimant's report that her thyroid level [sic] were controlled with medication" (R. 98). As pointed out by Plaintiff, Exhibit 8F (R. 587-591) contains records which predate the onset date alleged and those records reveal abnormally low T3 and T4 levels, and an abnormally high TSH level (R. 590-591).

The ALJ wrote "[r]egarding the claimant's APL [clotting] syndrome, the undersigned considered Exhibit 25F/9, which indicates that the condition is stabilized on Lovenox as of August 2013 (Exh. 24F/1)." (R. 98). But, Exhibit 25F is a Physical RFC Questionnaire, dated June 17, 2013, provided by Plaintiff's treating physician, Dr. Marcelin, which essentially opines that Plaintiff is incapable of working (R. 912-915). Exhibit 24F contains Dr. Marcelin's office treatment notes for the period of March 22, 2011 through May 15, 2013, and contains no August 2013 dates; nor does it mention Lovenox as stabilizing claimant's PT/INR values and other blood clotting factors (R. 890-912).

The ALJ said she "also considered Exhibit 13F, which documents a normal international normalized ratio (INR) and mildly elevated prothrombin time (PTT), supporting control of her coagulability." (R. 98). Contrary to the ALJ's decision, Exhibit 13F (R, 676-785) contains 110 pages of ER records from Florida Hospital for the period of November 15, 2010 through November 6, 2011, and these records often document PT/INR instability (See, *e.g.,* R. 681, 703, 744).

The ALJ also states that Plaintiff's "treating physician noted normal physical findings in May 2012 (Exhibit 19F). In addition, the exhibits documents [sic] full range of motion of the extremities without deformity on her April 2012 and February 2013 physical exams (Exhibits 19F and 24F)." (R. 98). However, Exhibit 19F contains medical treatment records from Dr. Lisa Minton for a different treatment period of January 26, 2012 through

February 28, 2012 (R. 847-849; see also R. 812-818). And, Exhibit 24F contains medical records from Dr. Marcelin but no examination dates for April 2012 and February 2013. (See R. 890-911).[8]

Perhaps most telling, the ALJ discussed Plaintiff's impairment of "fibromyalgia." (R. 98), even finding it to be a severe impairment, at step two (R. 95). However, there is no record evidence that Plaintiff suffers from fibromyalgia and she has not alleged any functional impairments from this condition.

The Commissioner acknowledges, as she must, that the exhibit numbers cited by the ALJ do not correspond to the numbers assigned to the medical evidence, but maintains that substantial evidence nevertheless supports the findings, as

> the ALJ cited Exhibit 8F as containing Plaintiff's report that her thyroid levels were controlled with medication (R. 98). Plaintiff's statement that her "thyroid level is under control" actually appears in Exhibit 10F and occurred on July 20, 2011 (R. 625). The ALJ also cited Exhibit 24F when discussing evidence that Plaintiff's blood clotting condition was stabilized on medication as of August 2013, whereas the treatment notes documenting that this condition had been "relatively stable" with medication appears in Exhibit 26F (R. 98, 924, 926).

(Doc. 17 at 24). The Commissioner also admits that the ALJ "mistakenly referred to Plaintiff's pain symptoms as fibromyalgia," but finds the error of no significance, as "the relevant issue is the extent to which Plaintiff's impairments, by whatever name or diagnosis, limited her ability to work." Id. at 26, n. 33. The Court is unpersuaded.

---

[8] The ALJ also wrote "[r]egarding the claimant's cerebrovascular accident, the record reflect [sic] a history of lacunar infarcts secondary to her APL syndrome with testing in 2007 positive for vestibulopathy and expressive difficulty noted on examination (Exhibits 2F and 3F). However, no neurological examination was noted when hospitalized in January 2011 (Exhibit 7F), and on consultative examination in July 2011 (Exhibit 8F) and by her treating physician at an office visit in August 2011 (Exhibit 9F)." (R. 99). Again, some of these exhibit references are incorrect and do not reflect the evidence that the ALJ has stated.

While an administrative decision does not need to be perfect and an occasional misstatement does not warrant remand in most circumstances, it is nonetheless essential that the rationale of the ALJ be set forth in such a way as to facilitate review and assure the Court that the evidence was adequately considered. The ex-post facto explanation offered by the Commissioner is insufficient to excuse all of the ALJ's errors and provide that assurance. This is especially so to the extent the ALJ was evaluating an impairment Plaintiff did not claim to have. And, even if the evidence was accurately cited, the administrative decision does not reflect adequate consideration of Plaintiff's impairments.

The ALJ found that Plaintiff suffered from a variety of impairments, including lupus related APLS, residuals from a CVA, depression, and hypothyroidism which persisted post thyroidectomy for thyroid cancer. In addition to various doctor's visits, the medical evidence shows numerous hospitalizations for transient ischemic attacks (R. 717, 685), abdominal pain (R. 812), impaired speech and chest pain (R. 887, 889), severe weakness (R. 949, 970, 973-974), and thyroid issues (R. 987-989; 1033, 1049). Plaintiff alleged that these conditions caused her a variety of non-exertional impairments, and the Commissioner acknowledges that "Plaintiff consistently reported fatigue to healthcare practitioners." (Doc. 17 at 27).[9] Nonetheless, the ALJ discounted the symptomology, and found that Plaintiff's conditions were mostly stable. The ALJ explained:

> The undersigned acknowledges the claimant's recent hospitalizations for generalized weakness for several days to the extent that she was bedridden, Dr. Marcelin's prescription for a wheelchair, and the subsequent admission for markedly elevated TSH. However, the undersigned has also considered the normal findings on physical examinations during these hospitalizations and the numerous normal test results; normal chest x-ray, electrocardiogram, echocardiogram, lung perfusion scan and colonoscopy. Additionally, CT and MRI of

---

[9] Plaintiff complained often of fatigue and weakness. See, e.g., R. 786, 845, 916, 918, 920, 922, 949, 1103, and 1041.

> the brain showed stable chronic findings, but noting acute (Exhibits 29F, 30F and 32F). The claimant was noted to by hypothyroid in December 2013, but acknowledged that she had not been taking her medication (Exhibit 29F). The most recent record in January 2014 shows a markedly elevated TSH level, but as noted above, physical examination was normal, and there is no evidence that this situation will not resolve with further treatment.
>
> In summary, the undersigned concludes that the claimant's chronic, but generally stable medical conditions do not preclude a range of light work.

(R. 99).

To the extent this is a credibility finding, the Court agrees with Plaintiff that these reasons are not substantial evidence to discount her alleged limitation of fatigue. The Commissioner has not explained how normal chest x rays, colonoscopy results or other tests are inconsistent with debilitating fatigue caused by lupus related clotting disorder and hypothyroidism.[10] See Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (noting that symptoms of dizziness, weakness and pain are "consistent with the progression of rheumatoid diseases such as systemic lupus" and a "full range of motion, lack of synovitis, and intact motor function provide no evidence that [claimant's] systemic lupus could not give rise to the pain in her lower extremities and the dizziness she describes"). Moreover, the medical record indicates that Plaintiff's thyroid level issues were not necessarily the result of not taking her medication, but could have been due to her not *absorbing* her medication. On January 25, 2014, Plaintiff was admitted to the

---

[10] Indeed, the Commissioner's argument on this issue is, at best, odd. The Commissioner contends:

"Although Plaintiff consistently reported fatigue to healthcare practitioners, there is little medical evidence confirming Plaintiff's claim that her fatigue was of such severity and frequency as to be debilitating (R. 626-28, 787, 789). Dr. Ranganathan noted Plaintiff was alert and awake (R. 626). Providers consistently noted Plaintiff was alert on examination (R. 821, 830, 856, 885, 892, 916-26, 960, 988)." (Doc. 17 at 27). The Court finds the ability to remain awake and alert during a doctor's examination is not inconsistent with a claim of debilitating fatigue.

- 9 -

hospital with a complaint of "Elevated TSH despite taking Synthroid" (R. 1041). The workup was suspicious for malabsorption syndrome and Plaintiff was discharged on February 11 2014, with an IV port in place for administration of IV Synthroid and a diagnosis of "resistant hypothyroidism, well controlled on IV thyroxine" (R. 1065-1066). Moreover, a finding that Plaintiff's fatigue would resolve with treatment is not evidence but speculation.[11]

In this circuit, "remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001). Here, the ALJ did not adequately evaluate the non-exertional symptoms of Plaintiff's demonstrated impairments and did not conduct a meaningful analysis of the effect of Plaintiff's fatigue and weakness on her ability to work. Id. As such, remand is required for further consideration of these issues.

*Plaintiff's remaining arguments*

Because remand is required based upon Plaintiff's first argument, it is unnecessary to review her remaining objection to the ALJ's decision. Freese v. Astrue, No.8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. April 18, 2008) (citing Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)). "On remand, however, the Commissioner is reminded of the substantial body of Eleventh Circuit case law encompassing the issues that Plaintiff raises in her memorandum of law." Id.

### Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

---

[11] It appears that this prediction did not ultimately prove to be true, as evidenced by the records submitted to the Appeals Council. As the majority of those records post-date the administrative decision, the Court need not consider them here.

(1) The Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2) The Clerk of Court is directed to enter final judgment pursuant to 42 U.S.C. § 405(g) and thereafter to close the file.

(3) The deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

(4) Upon receipt of such notice, Plaintiff shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

**DONE** and **ORDERED** in Orlando, Florida on December 5, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record